| **Valdez v De Schrijver** |
|---|
| 2024 NY Slip Op 31104(U) |
| April 2, 2024 |
| Supreme Court, New York County |
| Docket Number: Index No. 450657/2018 |
| Judge: Shlomo S. Hagler |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

# SUPREME COURT OF THE STATE OF NEW YORK
# NEW YORK COUNTY

| | |
|---|---|
| PRESENT: **HON. SHLOMO S. HAGLER** | PART 17 |
| _Justice_ | |

-------------------------------------------------------------------X

STEVEN VALDEZ,

                Plaintiff,

           - v -

JEROEN DE SCHRIJVER, SASKIA DER SCHRIJVER,
ELLEN LUTGARDE DEPOORTER, DIAGRAMA
CONSTRUCTION LLC,

                Defendant.

| | |
|---|---|
| INDEX NO. | 450657/2018 |
| MOTION DATE | 05/20/2020, 05/04/2020 |
| MOTION SEQ. NO. | 006 007 |

**AMENDED DECISION + ORDER ON MOTION**

-----------------------------------------------------------------X

JEROEN DE SCHRIJVER, SASKIA DER SCHRIJVER, ELLEN
LUTGARDE DEPOORTER

                Plaintiff,

           -against-

                Defendant.

Third-Party
Index No. 43341/2017E

-----------------------------------------------------------------X

The following e-filed documents, listed by NYSCEF document number (Motion 006) 191, 192, 193, 194, 195, 196, 197, 198, 199, 200, 207, 208, 209, 210, 211, 212, 213, 214, 215, 216, 219, 223, 233, 280, 281, 282, 283, 284, 285, 287, 288, 312, 313, 314, 316

were read on this motion to/for          SUMMARY JUDGMENT(AFTER JOINDER   .

The following e-filed documents, listed by NYSCEF document number (Motion 007) 167, 168, 169, 170, 171, 172, 173, 174, 175, 176, 177, 178, 179, 180, 181, 182, 183, 184, 185, 186, 187, 188, 189, 190, 217, 220, 221, 224, 234, 235, 236, 237, 238, 239, 240, 269, 270, 271, 272, 273, 274, 275, 276, 277, 278, 279, 289, 291, 292, 293, 294, 295, 296, 297, 298, 299, 300, 301, 302, 317, 319, 331, 332, 333

were read on this motion to/for          JUDGMENT - SUMMARY      .

Motion sequence numbers 006 and 007 are hereby consolidated for disposition.

## PROCEDURAL BACKGROUND

In this action, plaintiff, Steven Valdez, seeks damages for personal injuries he allegedly

sustained on September 20, 2016. Plaintiff alleges that he fell from an A-frame ladder (the

450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 1 of 30

"Subject Ladder") while working on a building renovation (the "Project") located at 289 Clinton Avenue, New York, NY (the "Premises"). He alleges that the Subject Ladder shifted while he was standing on it, causing him to fall.

At the time of the accident, the Premises was owned by Jeroen De Schrijver ("J. Schrijver"), Saskia De Schrijver ("S. Schrijver"), and Ellen Lutgarde Depoorter (collectively the "Owners"). Plaintiff was an employee of Vigilante Contracting, Co, Inc. ("Vigilante"), a contractor performing HVAC work on the Project. Plaintiff and the Owners allege that Diagrama Construction, LLC ("Diagrama") was the general contractor on the Project.

The Owners assert cross-claims against Diagrama for contractual indemnification, common law indemnification, and contribution.

In motion sequence 006, plaintiff moves for summary judgment pursuant to CPLR 3212 in his favor as to liability on his Labor Law §240 (1) claims against defendants.

In motion sequence 007, Diagrama moves for summary judgment pursuant to CPLR 3212 in its favor dismissing the complaint and the Owner's cross-claims.

### *Plaintiff's Deposition Testimony*

Plaintiff appeared for depositions on October 5, 2017 (NYSCEF Doc. No. 282), November 17, 2017 (NYSCEF Doc. No. 283), and February 15, 2019 (NYSCEF Doc. No. 284). At the time of the accident he was working for Vigilante, installing HVAC units on the Project (Plaintiff's October 5, 2017 tr. at 49-51). Plaintiff testified that the Project was a four-floor building (the "Building") renovation (*id.* at 72). He neither knew the Owners by name, nor had he ever heard of Diagrama (*id.* at 73-74).

Plaintiff testified that while he was working on the Project, he had a conversation with someone he believed to be the owner of the Building (the "Suspected Owner") (*id.* at 74-76).

450657/2018   VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No.  006 007

Page 2 of 30

2 of 30

[* 2]

This individual directed plaintiff as to the placement of a specific hole, but otherwise did not direct any of plaintiff's work on the Project (*id.* at 79-80). Plaintiff saw this individual twice on the worksite (Plaintiff's November 17, 2017 tr. at 70-71).

Plaintiff further testified that the Suspected Owner had a "supervisor for the whole job" (the "Project Supervisor") who was present at the worksite (Plaintiff's October 5, 2017 tr. at 77). Plaintiff testified that the Suspected Owner told the Project Supervisor to provide plaintiff with screws that plaintiff required for his work (*id.* at 77, 79). Plaintiff further testified that the Suspected Owner indicated to him that the Project Supervisor was the general contractor for the Project (Plaintiff's November 17, 2017 tr. at 70-71).

Plaintiff testified that the Project Supervisor was "in charge of everything" and that the Project Supervisor would tell the other workers on the project what to do (*id.* at 77-78). Plaintiff observed the Project Supervisor directing workers on the Project (*id.* at 69-70). He further testified that the Project Supervisor "moved around all over" the worksite (October 5, 2017 tr. at 156). Plaintiff testified that the Project Supervisor was not performing any work on the Project but was "giving orders to people" (Plaintiff's November 17, 2017 tr. at 72). Plaintiff had a conversation with the Project Supervisor, during which the Project Supervisor told him "anything that you need, just ask me" (*id.* at 9-10).

Plaintiff did not know if the Project Supervisor was actually the general contractor for the Project, nor did he know if the Project Supervisor had any of his own employees on the worksite (Plaintiff's October 5, 2017 tr. at 77-78; Plaintiff's November 17, 2017 tr. at 72). Plaintiff further testified that he did not know what company the Project Supervisor worked for, nor did the Suspected Owner ever introduce plaintiff to the Project Supervisor (Plaintiff's November 17,

450657/2018 VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 3 of 30

3 of 30

[* 3]

2017 tr. at 6-8). Plaintiff testified that the Project Supervisor never told plaintiff how to perform his work on the Project (Plaintiff's October 5, 2017 tr. at 156-157).

Plaintiff testified that prior to arriving at the worksite, Vigilante employees would go to the Vigilante office to get materials and tools (October 5, 2017 tr. at 55). A Vigilante supervisor would inform the workers where they would be working that day and what materials they would need for the job (*id.* at 56). The materials would then be placed on the company van, which the workers would take to the worksite (*id.* at 55-56).

Plaintiff testified that Vigilante had different types of ladders and that every van was equipped with two ladders (*id.* at 61-63). Vigilante's warehouse had approximately ten to twenty ladders of different types, including A-frame ladders (*id.* at 58-59). Plaintiff testified that if a Vigilante worker was at a worksite and needed a different type of ladder from the ladders provided, they could notify their supervisor and Vigilante would supply them with a different ladder (*id.* at 61-62). The worker would then go to the Vigilante warehouse to get the necessary ladder (*id.* at 61-62).

Plaintiff testified that he had been working at the worksite for approximately one-and-a-half weeks prior to the accident (*id.* at 82-84). There were four other companies working on the Project (*id.* at 10-18).

On the date of the accident, plaintiff was working at the worksite with two other Vigilante employees (Plaintiff's October 5, 2017 tr. at 90-92). One of these other Vigilante employees, "Frank," was plaintiff's superior and "in charge of the job, the job site" (*id.* at 94-95). The other Vigilante workers were working on the fourth floor of the Building, and plaintiff was told to work in another area (*id.* at 128-129).

**450657/2018   VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No. 006 007**

**Page 4 of 30**

4 of 30

Plaintiff testified that Vigilante had supplied two ladders (the "Vigilante Ladders"), which were on the fourth floor of the building with the other Vigilante workers (*id.* at 109-110, 128-129). Plaintiff testified that "we didn't have a third ladder" and that he "went downstairs to borrow one" (*id.* at 128-129). Plaintiff could not recall what kind of work the other Vigilante employees were doing on the fourth floor (*id.* at 128-129).

Plaintiff's work involved running a pipe from the third floor through the second-floor ceiling and connecting it to another pipe located on the second floor (*id.* at 100). The point of connection between the pipes was approximately nine feet high (*id.* at 102-103).

Plaintiff testified that he found the Subject Ladder on the second floor of the Building (*id.* at 107, 113). The Subject Ladder was already in an open position and located near the area where plaintiff needed to work (*id.* at 111, 117-118). The Subject Ladder was not one of the Vigilante Ladders, which plaintiff testified were still on the fourth floor (*id.* at 109-110). Plaintiff testified that the date of his accident was the first time he had ever seen the Subject Ladder and that he did not know to whom it belonged (*id.* at 111-112). He further testified that the Subject Ladder did not have any type of locking mechanism nor wheels (*id.* at 118).

Plaintiff testified that there was only one other individual on the second floor immediately prior to the accident (*id.* at 115), Plaintiff described the individual as an "electrician" (the "Electrician") but did not know what company the Electrician was working for (*id.* at 115). Plaintiff testified that the Electrician told him he could use the Subject Ladder, but that plaintiff did not know if the Subject Ladder belonged to the Electrician (*id.* at 129). Plaintiff further testified that prior to using the Subject Ladder he "moved it" to make sure that the Subject Ladder "doesn't cause no problems" (*id.* at 118-119).

450657/2018   VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No.  006 007

Page 5 of 30

5 of 30

The accident occurred as plaintiff was standing on the Subject Ladder connecting the two pipes at the connection point (*id.* at 100-103). Plaintiff had climbed up the Subject Ladder to take measurements and then climbed down in order to cut a piece of pipe (*id.* at 118). Plaintiff cut the pipe and ascended the Subject Ladder again, carrying the piece of pipe (*id.* at 118 - 119). Plaintiff testified that the Subject Ladder "stumbled" and moved to the side, causing him to fall (*id.* at 121-122).

### *Deposition Testimony of Jeroen De Schrijver, Co-owner of the property*

J. Schrijver appeared for deposition on February 21, 2019 (NYSCEF Doc. No. 184). At the time of the accident, he, S. Schrijver and Depoorter were co-owners of the Building (J. Schrijver tr. at 43-44). He further testified that he hired all of the contractors for the Project (*id.* at 68).

J. Schrijver testified that in 2016, when the main renovation work began, he hired Diagrama as the general contractor for the Project (*id.* at 69, 149, 152). He further testified that in addition to being the general contractor, Diagrama was also hired to install sheetrock as part of the Project (*id.* at 79, 141). There was no written contract between J. Schrijver and Diagrama, and J. Schrijver paid Diagrama according to a "contractor project" (*id.* at 71, 142). J. Schrijver testified that he had previously worked with Diagrama on other construction projects and spoke to Antonio Araujo from Diagrama about being the general contractor on the Project (*id.* at 72, 76, 78-79).

J. Schrijver testified that Diagrama, in its role as general contractor, had authority over the contractors and interacted with them when J. Schrijver was not at the worksite (*id.* at 82-83). This authority included Diagrama giving contractors work instructions and reporting any safety hazards to J. Schrijver (*id.* at 82). He further testified that Diagrama had two to five employees

450657/2018 VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 6 of 30

6 of 30

[* 6]

on the worksite on a regular basis and that Diagrama had "informal discussions" with the trade contractors regarding safety on the Project (*id.* at 83-85). Diagrama also reviewed the scope and budget of the contractors' work (*id.* at 152-154). J. Schrijver also expected that Diagrama would conduct walkthroughs of the worksite and report back to him any issues as to the contractors' work (*id.* at 81). He further testified that Diagrama did not hire any contractors for the Project (*id.* at 155-156).

J. Schrijver testified that Diagrama was the general contractor on the project when he hired Vigilante (*id.* at 152). Vigilante worked on the Project for approximately eight weeks and Diagrama was present at the worksite at the same time as Vigilante (*id.* at 82, 102). J. Schrijver further testified that Diagrama had the authority to supervise Vigilante's work (*id.* at 156-158).

J. Schrijver testified that he observed ladders on the worksite (*id.* at 106-107). He also observed both Diagrama and Vigilante using ladders on the worksite (*id.* at 109-111) He further testified that one of his ladders was on the worksite from before the time Diagrama started on the Project (*id.* at 107). J. Schrijver testified that he did not provide a ladder to be used by anyone else on the worksite (*id.* at 107). He further testified that he had a discussion "with every single contractor" telling them not to use any ladders that were not their own (*id.* at 90-91). However, he did not tell any of the workers that they were only to use ladders that belonged to their specific companies (*id.* at 91).

J. Schrijver was not at the worksite at the time of the accident and was informed of the accident after it had occurred (*id.* at 114-116). He further testified that he did not know where the accident occurred on the worksite (*id.* at 128). He never made any effort to look at the Subject Ladder, nor did he ever take photographs of said ladder (*id.* at 122-123).

450657/2018   VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No.  006 007

Page 7 of 30

7 of 30

[* 7]

At some point after the accident, J. Schrijver had a meeting with Araujo and a representative of "the insurance company" (the "Insurance Representative") at the worksite (*id.* at 123-124). J. Schrijver testified that during said meeting he, the Insurance Representative, and Araujo went to the location at the worksite where the accident "supposedly happened" (*id.* at 128-129). J. Schrijver testified that this location was on the first floor, towards the front of the building (*id.* at 128). He further testified that when he was brought to this location, a ladder (the "Schrijver Ladder") was present there (*id.* at 129).

J. Schrijver testified that the Insurance Representative informed him that the Schrijver Ladder was the ladder involved in plaintiff's accident (*id.* at 129-130). J. Schrijver identified the Schrijver Ladder as his own but does not know if the Schrijver Ladder was the ladder involved in the accident. He further testified that the Insurance Representative took photographs of the Schrijver Ladder (*id.* at 132). J. Schrijver could not recall whether Araujo identified the Schrijver Ladder as the ladder involved in the accident (*id.* at 132-133).

### *Deposition Testimony of Antonio Araujo, president of Diagrama*

Antonio Araujo appeared for deposition on February 21, 2019 (NYSCEF Doc. No. 185). At the time of the accident, he was the president of Diagrama (*id.* at 13). He testified that Diagrama had a general contractor's license for approximately ten years (*id.* at 66). Araujo further testified that he does not know his general contracting license number (*id.* at 77).

Araujo testified that Diagrama was not the general contractor over the Project. Araujo further testified that he did not have any contract with any of the Owners as to the Project (*id.* at 41, 64). He further testified that he was not J. Schrijver's employee and was only "supporting him" on the Project (*id.* at 61-64). Araujo testified that J. Schrijver was in charge of the Project

450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 8 of 30

8 of 30

[* 8]

and directly hired all of the contractors on the Project (*id.* at 15-16, 30). Araujo testified that he was not involved in the hiring of any contractors for the Project (*id.* at 38).

Araujo testified that J. Schrijver only used Diagrama in order to obtain the necessary work permits for the Project (*id.* at 14-15). Araujo testified that J. Schrijver wanted to "do the job himself" but could not get the necessary permits because J. Schrijver was not a construction company (*id.* at 21-23). Araujo testified that he agreed to allow J. Schrijver to use Diagrama in order to get the necessary permits (*id.* at 22-23).

During the course of his deposition, Araujo was shown a document entitled "NYC Department of Buildings Work Permit Data" that refers to HVAC work done on the Premises (Araujo deposition, plaintiff's exhibit 5). The document refers to a work permit issued on June 3, 2016 that expired on December 9, 2016. The document indicates that it was issued to Araujo and names Diagrama as the "business." Araujo testified that J. Schrijver submitted the information required from the issuance of this work permit (*id.* at 76-77).

Araujo was shown a second document entitled "NYC Department of Buildings Work Permit Data" that also refers to construction work performed on the Premises (Araujo deposition, plaintiff's exhibit 6). The document refers to a work permit issued on June 3, 2016 that expired on December 9, 2016. The document also indicates that it was issued to Araujo and names Diagrama as the "business". Araujo testified that J. Schrijver also submitted the information required from the issuance of this work permit, and that he never saw what J. Schrijver submitted in order to get the permit issued (*id.* at 78-79).

Araujo testified that he brought materials to the worksite and reviewed some of the work being done on the Project, not as a general contractor, but out of friendship with J. Schrijver (*id.* at 27-28). He further testified that he never spoke to Vigilante's workers nor any of the other

450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 9 of 30

9 of 30

[* 9]

contractors working on the Project (*id.* at 29-30). He testified that he never had any discussions with J. Schrijver as to the other contractors' work on the Project (*id.* at 36).

Araujo testified that the only work Diagrama did on the Project was sheetrock and painting (*id.* at 35). He further testified that other than sheetrock and painting, he was only at the worksite to "support" J. Schrijver (*id.* at 35).

Araujo testified that he never had any conversations with J. Schrijver as to the use of ladders on the worksite (*id.* at 36-37). He further testified that Diagrama did not have any ladders on the worksite (*id.* at 66). He testified that he did not know if J. Schrijver had a ladder at the worksite (*id.* at 74).

Araujo testified that he was on the worksite on the date of the accident but did not witness the accident (*id.* at 42-43). He arrived at the worksite at approximately 10:00 a.m. and left around 2:00 to 3:00 p.m. (*id.* at 44). During that time, he was observing the quality of the work being done on the Project (*id.* at 44-45). Araujo testified that he spent most of his time on the fourth floor of the Building and had only gone through the lower floors (i.e. the first, second, and third floors) to get to the fourth floor (*id.* at 46-47). He did not look at any of the work being done on the first through third floors (*id.* at 47-48). Araujo could not recall if he saw any ladders on the fourth floor of the Building (*id.* at 49).

Araujo testified that while he was on the fourth floor, he heard a noise followed by a scream (*id.* at 51-52). He then went down to the first floor and saw that the Vigilante workers had called an ambulance for the injured worker (*id.* at 52).

Araujo testified that at some point after the accident, he had a meeting with J. Schrijver and the Insurance Representative (*id.* at 66-67). Araujo testified that he did not tell the Insurance Representative that he saw the accident, knew how it happened or that the accident involved a

450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 10 of 30

ladder (*id.* at 69). Araujo testified that he went to the first floor of the Building with the Insurance Representative (*id.* at 71). He further testified that he did not see a ladder while the Insurance Representative was with him (*id.* at 73-74).

### *Deposition Testimony of Robert Rivera, "comfort advisor" employed by Vigilante*

Robert Rivera appeared for deposition on July 19, 2019 (NYSCEF Doc. No. 188). At the time of the accident, he was employed by Vigilante as a "comfort advisor" (Rivera tr. at 61). Rivera testified that he was J. Schrijver's primary point of contact at Vigilante (*id.* at 45). He further testified that he created a proposal for J. Schrijver and sold equipment to him (*id.* at 18). Rivera testified that J. Schrijver explained the scope of the Project to him (*id.* at 24). In addition, Rivera went to the Premises to meet with J. Schrijver, take photos, and make measurements (*id.* at 22).

Rivera believed that J. Schrijver was the general contractor for the Project (*id.* at 83). Rivera testified that based upon his conversations with J. Schrijver, he believed that J. Schrijver was in charge of the Project (*id.* at 83). Rivera further testified that J. Schrijver never identified anyone else as a contact person with respect to the Project (*id.* at 83). Besides Vigilante employees, J. Schrijver was the only person Rivera spoke to on the Premises (*id.* at 84). Rivera did not meet with S. Schrijver or Depoorter (*id.* at 27-28). He further testified that he never spoke to Araujo with reference to the Project (*id. at 82-83)*. Rivera did know anything about anyone else who worked on the Project (*id.* at 89-90).

Rivera testified that there were three Vigilante employees dedicated to working on the Project (*id.* at 62). He further testified that at the time of the accident, plaintiff was employed by Vigilante as a service technician (*id.* at 61-63).

450657/2018   VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 11 of 30

11 of 30

Rivera testified that Vigilante had an installation manager for the Premises, who was responsible for installing teams, going over the project, and keeping in communication as to any issue that came about (*id.* at 68-69). If any issues came up during Vigilante's work, they would be resolved by speaking with the installation manager or communicating with the installation manager if he was off-site (*id.* at 70-71).

Rivera testified that Vigilante provided its employees with ladders (the "Vigilante Ladders") to work on the Project (*id.* at 39). He further testified that the Vigilante Ladders were the only equipment Vigilante workers used to reach the ceilings on the Project (*id.* at 40). Rivera testified that he saw ladders at the worksite other than the ones provided by Vigilante (*id.* at 94).

Rivera testified that he did not know anything about the accident except that plaintiff fell at the worksite (*id.* at 88).

### *Deposition Testimony of Saskia De Schrijver, Co-owner of the property*

S. Schrijver appeared for deposition on April 8, 2019 (NYSCEF Doc. No. 186). At the time of the accident, she, J. Schrijver, and Depoorter were all co-owners of the Building (S. Schrijver tr. at 11). She testified that the Project began in 2016 (*id.* at 16-17). She further testified that Depoorter and J. Schrijver hired the contractors for the Project and that she was not involved (*id.* at 21-22). S. Schrijver testified that she never spoke to any of the contractors on the Project (*id.* at 24).

S. Schrijver testified that Araujo was "the central figure for the workmen to talk to" at the worksite and that he "seemed to be the person in charge" (*id.* at 26). She did not know how often Araujo was at the worksite (*id.* at 26)

S. Schrijver did not witness the accident, nor did she provide any safety equipment for the Project (*id.* at 29).

450657/2018   VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No.  006 007

Page 12 of 30

### *Deposition Testimony of Ellen Depoorter, Co-owner of the property*

Depoorter appeared for deposition on April 8, 2019. At the time of the accident, she was one of the co-owners of the Building (*id.* at 10). She testified that J. Schrijver hired Diagrama as the general contractor over the Project and that Araujo was the owner of Diagrama (*id.* at 16-17). She further testified that as the general contractor, Araujo had a supervisory role over the other contractors on the Project (*id.* at 19-20).

Depoorter was not involved in the Project, nor did she provide any equipment on the worksite (*id.* at 21-24).

### *DISCUSSION*

It is well established that "[t]he proponent of summary judgment must establish its defense or cause of action sufficiently to warrant a court's directing judgment in its favor as a matter of law" (*Ryan v Trustees of Columbia Univ. in the City of N.Y., Inc.*, 96 AD3d 551, 553 [1st Dept 2012] [internal quotation marks and citation omitted]). "Thus, the movant bears the burden to dispel any question of fact that would preclude summary judgment" (*id*). "Once this showing has been made, the burden shifts to the nonmoving party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact that require a trial for resolution" (*Giuffrida v Citibank Corp.*, 100 NY2d 72, 81 [2003]).

"[F]acts must be viewed in the light most favorable to the non-moving party" (*Vega v Restani Constr. Corp.*, 18 NY3d 499, 503 [2012] [internal quotation marks and citation omitted]). If there is any doubt as to the existence of a triable issue of fact, summary judgment must be denied (*Rotuba Extruders v Ceppos*, 46 NY2d 223, 231 [1978]; *Grossman v Amalgamated Hous. Corp.*, 298 AD2d 224, 226 [1st Dept 2002]).

450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 13 of 30

[* 13]

13 of 30

*The Owner's purported affidavits submitted in opposition to Diagrama's motion (motion sequence 007)*

The Owners submit two purported "affidavits" by J. Schrijver in opposition to Diagrama's motion (NYSCEF Doc. No. 292 & 302).[1] These documents do not meet the requirements of CPLR 2309 as they were not sworn before an appropriate officer, nor were they sworn under penalty of perjury as required by CPLR 2106.

As such, the Court will not consider the purported "affidavits" in opposition to Diagrama's motion.

*Plaintiff's Labor Law § 240 (1) claim against Owners (motion sequence 006, 007)*

Plaintiff moves for summary judgment as to liability on his Labor Law § 240 (1) claim against the Owners. He argues that he has met his prima facie burden as he fell from an A-frame ladder while doing construction work at the Premises and the Owners' failure to provide adequate safety equipment was a proximate cause of the accident.

The Owners argue in opposition that plaintiff has failed to meet his prima facie burden. Specifically, they argue that plaintiff has not established that the Owners failed to provide him with adequate equipment and/or that the A-frame ladder was defective. They further argue that plaintiff was the sole proximate cause of the accident. Specifically, they argue that Vigilante provided plaintiff with the Vigilante Ladders, however, plaintiff chose to use "an unauthorized ladder with which he had no familiarity and which he did not inspect" (Owners' affirmation in opposition at para 27, NYSCEF Doc. No. 280). In addition, the Owners argue that plaintiff was recalcitrant in that he chose not to use the Vigilante Ladders even though they were available to him.

---

[1] The Court will consider the Owners' amended opposition to Diagrama's summary judgment motion and not the Owners' original opposition papers.

**450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No.  006 007**

**Page 14 of 30**

Labor Law § 240 (1), also known as the Scaffold Law reads as follows:

"Scaffolding and other devices for use of employees

"1. All contractors and owners and their agents, except owners of one and two-family dwellings who contract for but do not direct or control the work, in the erection, demolition, repairing, altering, painting, cleaning or pointing of a building or structure shall furnish or erect, or cause to be furnished or erected for the performance of such labor, scaffolding, hoists, stays, ladders, slings, hangers, blocks, pulleys, braces, irons, ropes, and other devices which shall be so constructed, placed and operated as to give proper protection to a person so employed."

Labor Law § 240 (1) "imposes upon owners, contractors and their agents a nondelegable duty that renders them liable regardless of whether they supervise or control the work" (*Barreto v Metropolitan Transp. Auth.*, 25 NY3d 426, 433 [2015]). Said liability applies to "injuries that are proximately caused by the failure to provide appropriate safety devices to workers subject to gravity-related risks" (*Ladd v Thor 680 Madison Ave LLC*, 212 AD3d 107, 111 [1st Dept 2022]).

"The mere fact that a worker falls from a ladder or a scaffolding is not enough, by itself, to establish that the device did not provide sufficient protection. The worker must show that Labor Law § 240 (1) was violated and the violation was a proximate cause of the injury." (*Nazario v 222 Broadway, LLC*, 135 AD3d 506, 508 [1st Dept 2016] citing *Blake v Neighborhood Hous. Servs. of N.Y. City*, 1 NY3d 280, 289 [NY 2003]). "[T]he single decisive question is whether plaintiff's injuries were the direct consequence of a failure to provide adequate protection against a risk arising from a physically significant elevation differential" (*Runner v New York Stock Exch., Inc.*, 13 NY3d 599, 603 [2009]).

Here, plaintiff has established prima facie that he was subjected to a gravity related risk, that the Owners failed to furnish him with adequate safety equipment, and that said failure was a proximate cause of the accident. Specifically, plaintiff has established that the Owners furnished

450657/2018   VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 15 of 30

[* 15]

the Subject Ladder, which proved inadequate to protect him from a gravity related hazard and proximately caused his fall.

Labor Law § 240 (1) specifically requires that Owners "shall furnish or erect, or cause to be furnished" safety equipment sufficient to protect workers subjected to gravity related risks. It is undisputed that the Owners owned the Building and that the Project was the sole construction project being conducted at the worksite. It is further undisputed that the Subject Ladder was on the worksite at the time of the accident.

For the purposes of Labor Law § 240 (1), the Owners "furnished" the Subject Ladder for plaintiff's use by directly placing the Subject Ladder on the worksite and/or allowing it to be present on the worksite (*See Cherry v Time Warner, Inc.*, 66 AD3d 233, 236 [1st Dept 2009] ["[I]n determining whether there is a violation of Labor Law § 240 (1), or whether a worker is the sole proximate cause of his injuries, the issue to be addressed first is whether adequate safety devices were provided, 'furnished' or 'placed' for the worker's use on the work site"). This taken together with plaintiff's testimony that the accident occurred when the Subject Ladder "stumbled" (Plaintiff's October 5, 2017 tr. at 121-122), is sufficient to satisfy plaintiff's prima facie burden on his Labor Law § 240 (1) claim against the Owners (*See Castillo v TRM Contr. 626, LLC*, 211 AD3d 430, 430 [1st Dept 2022] ["It is well settled that a statutory violation is established if a scaffold or ladder shifts, slips, or collapses, thereby causing injury to a worker."] citing *Panek v County of Albany*, 99 NY2d 452, 458 [2003]; *see also Pinzon v Royal Charter Props., Inc.*, 211 AD3d 442, 443 [1st Dept 2022] ["plaintiff is not required to demonstrate that the ladder was defective in order to make a prima facie showing of entitlement to summary judgment on his Labor Law § 240(1) claim"]).

450657/2018   VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 16 of 30

[* 16]

The Court recognizes that there is an issue of fact as to the provenance of the Subject Ladder (i.e. whether it belonged to the Owners and how it came to be placed on the worksite). Although the Subject Ladder's provenance may speak to the Owners' common law duty of care as codified under Labor Law § 200, it does not speak to plaintiff's Labor Law § 240 claim.[2] It is undisputed that the Subject Ladder was furnished and placed within the worksite. Plaintiff's prima facie burden (on his Labor Law § 240 claim) does not require that he establish who specifically placed the Subject Ladder in the worksite.

Further, the Owners have failed to create an issue of fact as to whether plaintiff was the sole proximate cause of the accident. The Court of Appeals has distinguished between recalcitrance and the defense that a plaintiff was the sole proximate cause of the subject accident (*See Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d 35, 40 [2004] ["Even when a worker is not recalcitrant there can be no liability under section 240 (1) when there is no violation and the worker's actions (here, his negligence) are the 'sole proximate cause' of the accident"] [internal quotation marks and citations omitted])

To determine whether there is an issue of fact as to sole proximate cause, "the issue to be addressed first is whether adequate safety devices were provided, 'furnished' or 'placed' for the worker's use on the work site" (*Cherry*, 66 AD3d at 236).

As previously stated, the Owners furnished the Subject Ladder on the worksite and the Subject Ladder was a proximate cause of the accident. To the extent that plaintiff's use of the Subject Ladder (as opposed to the Vigilante Ladders) may indicate contributory negligence, it is insufficient to create an issue of fact as to whether he was the sole proximate cause of the

---

[2] As plaintiff has not moved for summary judgment against the Owners on his Labor Law § 200 and common law negligence claims, nor have the Owners moved for summary judgment dismissing said claims, these issues are not before the Court in the instant motions.

**450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No. 006 007**

Page 17 of 30

[* 17]

17 of 30

accident (*See generally Sinera v Embassy House Eat, LLC,* 188 AD3d 549, 549 [1st Dept 2020] [contributory negligence, even if proved, is not a defense to a Labor Law § 240 claim]).

Similarly, the Owners have also failed to create an issue of fact as to whether plaintiff was recalcitrant in choosing to use the Subject Ladder and not the Vigilante Ladders. "[A]n owner who has provided safety devices is not liable for failing to insist that a recalcitrant worker use the devices" (*Cahill v Triborough Bridge & Tunnel Auth.*, 4 NY3d at 39 [2004] [internal quotation marks and citation omitted]). The "recalcitrant worker" defense "requires a showing that the injured worker refused to use the safety devices that were provided by the owner or employer" (*Stolt v General Foods Corp.*, 81 NY2d 918, 920 [1993]). More specifically, it "requires a showing that the safety device in question was both available and visibly in place at the immediate worksite of the injured employee who deliberately refused to use it." (*Powers v Del Zotto & Son Bldrs.*, 266 AD2d 668, 669 [3rd Dept 1999] [internal quotation marks and citations omitted]).

Recalcitrance "is not established merely by showing that the worker failed to comply with an employer's instruction to avoid using unsafe equipment or engaging in unsafe practices, or to use a particular safety device." (*Powers* at 669). Rather, the defendant must show that plaintiff deliberately refused to obey a direct and immediate instruction to use an available safety device (*See Vitucci v. Durst Pyramid LLC*, 205 AD3d 441, 444 [1st Dept 2022], citing *Saavedra v 89 Park Ave. LLC*, 143 AD3d 615 [1st Dept 2016]; *see also Santo v Scro*, 43 AD3d 897, 898-899 [2d Dept 2007]).

Here, there is nothing from the record to establish that plaintiff was ever directed not to use any ladders other than the Vigilante Ladders. Further, although J. Schrjver testified the had a discussion "with every single contractor" not to use any ladders that were not their own (J.

450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 18 of 30

[* 18]

18 of 30

Schrijver tr. at 90-91), he specifically testified that he did not tell any of the workers that they were only to use ladders that belonged to their specific companies (*id.* at 91).

Accordingly, Plaintiff is entitled to summary judgment on his Labor Law § 240 (1) as against the Owners.

### Plaintiff's Labor Law § 240 (1) claim against Diagrama (motion sequence 006, 007)

Plaintiff moves for summary judgment as to liability on his Labor Law § 240 (1) claims against Diagrama. Diagrama opposes and moves for summary judgment dismissing the complaint as against it.

Diagrama argues that it is entitled to summary judgment dismissing the complaint on the basis that plaintiff was the sole proximate cause of the accident and that Diagrama was neither the general contractor nor the Owners' agent as to the Project.

Plaintiff argues in opposition that Diagrama was the general contractor and/or the Owners' agent on the Project.

The Owners also argue in opposition that Diagrama was their general contractor on the Project.

As previously stated, plaintiff has met his prima face burden on his Labor Law § 240 claim and there is no issue of fact as to the sole proximate cause nor recalcitrance defenses.

However, there is an issue of fact as to whether Diagrama is a proper Labor Law defendant. By its language, Labor Law §240 (1) applies to '[a]ll contractors and owners and their agents." The statute does not include the term "general contractor," nor define "general contractor" as a specific term of art. Whether a contractor is subject to liability under Labor Law § 240 stems from their scope of authority and not necessarily their given title (*see Walls v. Turner Constr. Co.,* 4 NY3d 861, 864 [2005] [The label of construction manager versus general

450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 19 of 30

[* 19]

contractor is not necessarily determinative of whether a contractor is subject to liability under the labor law]). "A contractor is subject to liability under Labor Law §§ 240(1) and 241(6) where the contractor is responsible for coordinating and supervising the entire construction project and [is] invested with a concomitant power to enforce safety standards and to hire responsible contractors" (*Londono v Dalen, LLC*, 204 AD3d 658, 659-660 [2nd Dept 2022] [internal quotation marks and citations omitted]).

In addition, a contractor may be subject to liability under the Labor Law as an agent of the owner or general contractor.

> "To hold a defendant liable under the Labor Law as a statutory agent of either the owner or the general contractor, it must be shown that the defendant had the authority to supervise and control the injury-producing work. The determinative factor is whether the defendant had the right to exercise control over the work, not whether it actually exercised that right. Where the owner or general contractor delegates to a third party the duty to conform to the requirements of the Labor Law, that third party becomes the statutory agent"

(*Santos v Condo 124 LLC*, 161 AD3d 650, 653 [1st Dept 2018] [internal quotation marks and citations omitted]).

It is undisputed that there was no written contract between the Owners and Diagrama as to the Project. Further, Araujo's (Diagrama's President) testimony directly contradicts the Owners' testimony as to Diagrama's role and authority over the Project (*see Alvarez v 2455 8 Ave, LLC*, 202 AD3d 724, 725 [2nd Dept 2022] [submitted depositions create issue of fact as to defendant's status as general contractor]).

As there is an issue of fact as to whether Diagrama is a proper Labor Law defendant, plaintiff has failed to establish that he is entitled to summary judgment against Diagrama on his Labor Law § 240 (1) claim and Diagrama had failed to establish that it is entitled to dismissal of the claim.

**450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No. 006 007**

**Page 20 of 30**

20 of 30

### Plaintiff's Labor Law § 241 (6) claims against Diagrama (motion sequence 007)

Diagrama moves for summary judgment dismissing plaintiff's Labor Law § 241 (6) claims against it. Diagrama argues that it did not exercise the requisite authority to be subject to Labor Law § 241 (6) and that the alleged statutory violations are insufficient to form a basis for Labor Law § 241 (6) claims and/or are inapplicable to the alleged facts.

Plaintiff argues in opposition that Diagrama was the general contractor on the Project and as such a proper Labor Law defendant. He further argues that his Labor Law § 241 (6) claim is based upon the defendants' violations of Industrial Code §§ 23-1.21(b)(1), (b)(4)(iv), and (e)(3), which are sufficient to form the bases for a claim and relevant to the underlying facts.

The Owners argue in opposition to the motion that Diagrama was the general contractor on the Project and therefore subject to Labor Law § 241 (6).

As plaintiff does not oppose dismissal of his Labor Law § 241 (6) claims based upon any alleged violations other than Industrial Code § 23-1.21 (b)(1), (b)(4)(iv), (e)(2), and (e)(3), said claims are dismissed as abandoned (*See Kempisty v 246 Spring St., LLC*, 92 AD3d 474, 475 [1st Dept 2012] ["Where a defendant so moves, it is appropriate to find that a plaintiff who fails to respond to allegations that a certain section is inapplicable or was not violated be deemed to abandon reliance on that particular Industrial Code section."]).

As such, the only Labor Law § 241 (6) claims before the Court are those based upon the defendants' alleged violations of Industrial Code § 23-1.21 (b)(1), (b)(4)(iv), (e)(2), and (e)(3)

Labor Law §241 (6) reads as follows:

"Construction, excavation and demolition work

. . .

"6. All areas in which construction, excavation or demolition work is being
performed shall be so constructed, shored, equipped, guarded, arranged, operated

**450657/2018 VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No. 006 007**

Page 21 of 30

21 of 30

and conducted as to provide reasonable and adequate protection and safety to the persons employed therein or lawfully frequenting such places. The commissioner may make rules to carry into effect the provisions of this subdivision, and the owners and contractors and their agents for such work, except owners of one and two-family dwellings who contract for but do not direct or control the work, shall comply therewith."

"Labor Law § 241 (6) imposes a non-delegable duty on owners and contractors to provide reasonable and adequate protection and safety for workers and to comply with the specific safety rules and regulations promulgated by the Commissioner of the Department of Labor" (*Toussaint v Port Auth. of N.Y. & N.J.*, 38 NY3d 89, 93 [2022] [internal quotations marks and citations omitted]).

The non-delegable duty is absolute and "imposes liability upon a general contractor for the negligence of a subcontractor, even in the absence of control or supervision of the worksite" (*Rizzuto v L.A. Wenger Contr. Co.*, 91 NY2d 343, 348-349 [1998], citing *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 502 [1993] [emphasis omitted]). "To establish liability under Labor Law § 241 (6), a plaintiff must demonstrate that his or her injuries were proximately caused by a violation of an Industrial Code provision 'mandating compliance with concrete specifications'" (*Ennis v Noble Constr. Group, LLC*, 207 AD3d 703, 705 [2d Dept 2022], quoting *Ross v Curtis-Palmer Hydro-Elec. Co.*, 81 NY2d 494, 505 [1993]).

As previously stated, there is an issue of fact as to whether Diagrama is a proper Labor Law defendant. Assuming arguendo that Diagrama is a proper Labor Law defendant, the Court will examine each of the alleged Industrial Code violations to determine if they form a sufficient bases for plaintiff's Labor Law § 241 (6) claims and are relevant to the underlying factual allegations.

**450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No. 006 007**

**Page 22 of 30**

22 of 30

[* 22]

*Industrial Code 23-1.21(b)(1)*

Industrial Code 23-1.21(b)(1) is sufficiently specific to form a basis for liability pursuant to Labor Law § 241 (6) (*See Przyborowski v A&M Cook, LLC*, 120 AD3d 651, 654 [2nd Dept 2014]) and reads as follows:

"Ladders and ladderways

"(b) General requirements for ladders.

"(1) Strength. Every ladder shall be capable of sustaining without breakage, dislodgment or loosening of any component at least four times the maximum load intended to be placed thereon."

Here, there is no testimony that the Subject Ladder broke, dislodged or loosened due to excess weight. Plaintiff testified that the accident occurred when the Subject Ladder "stumbled" (Plaintiff's October 5, 2017 tr. at 121-122). As such, Industrial Code 23-1.21 (b) (1) is not applicable to the underlying action.

*Industrial Code 23-1.21 (b)(4)(iv)*

Industrial Code 23-1.21 (b)(4)(iv) is sufficiently specific to form a basis for liability pursuant to Labor Law § 241 (6) (*See Rivera v Suydam* 379 LLC, 216 AD3d 495, 496 [1st Dept 2023]) and reads as follows:

"Ladders and ladderways

"(4) Installation and use.

"(iv) When work is being performed from ladder rungs between six and 10 feet above the ladder footing, a leaning ladder shall be held in place by a person stationed at the foot of such ladder unless the upper end of such ladder is secured against side slip by its position or by mechanical means. When work is being performed from rungs higher than 10 feet above the ladder footing, mechanical means for securing the upper end of such ladder against side slip are required and the lower end of such ladder shall be held in place by a person unless such lower end is tied to a secure anchorage or safety feet are used."

**450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No. 006 007**

**Page 23 of 30**

[* 23]

Plaintiff testified that the Subject Ladder was an A-Frame ladder and that it was fully opened at the time of the accident. As such, the accident did not involve a "leaning ladder" and does not fall within the scope of Industrial Code 23-1.21 (b)(4)(iv) (*See Jara-Salazar v. 250 Park, L.L.C.,* 2023 NY Slip Op 33764(U), 11 [Sup Ct, NY County 2023] citing *Morato-Rodriguez v Riva Construction Group, Inc.*, 2012 NY Misc LEXIS 7007, 2012 WL 9514734 (Sup Ct, Bronx County, 2012) *affd as modified* 115 AD3d 401 [1st Dept 2014]; *Balleste v Forest City Ratner Companies*, LLC, 2019 NY Slip Op 32214(U) [Sup Ct, NY County 2019]; *cf. Rivera v Suydam 379 LLC,* 216 AD3d 495 [1st Dept 2023] [finding triable issue as to whether industrial code provision violated where testimony ambiguous as to whether A-Frame ladder was closed and leaning or open and locked]).

## *Industrial Code 23-1.21 (e) (2) and (3)*

Industrial Code 23-1.21 (e) (2) & (3) is sufficiently specific to form a basis for liability pursuant to Labor Law § 241 (6) (*See Przyborowski v A&M Cook, LLC*, 120 AD3d 651, 654 [2d Dept 2014]; *McNamara v. Gusmar Enters., LLC,* 204 AD3d 779, 782 [2d Dept 2022]) and read as follows:

"Ladders and ladderways

"Stepladders

"(2) Bracing. Such bracing as may be necessary for rigidity shall be provided for every stepladder. When in use every stepladder shall be opened to its full position and the spreader shall be locked."

"(3) Stepladder footing. Standing stepladders shall be used only on firm, level footings. When work is being performed from a step of a stepladder 10 feet or more above the footing, such stepladder shall be steadied by a person stationed at the foot of the stepladder or such stepladder shall be secured against sway by mechanical means."

For subsection (2), plaintiff testified that the ladder was opened and locked, and there is no testimony in the record that it was missing any required bracing. As for subsection (3), there is

**450657/2018 VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No. 006 007**

**Page 24 of 30**

24 of 30

[* 24]

nothing in the record that would establish that the floor was uneven such that use of a step ladder would violate this provision. Further, plaintiff did not testify that he was working from a step of a stepladder above ten feet. As such, Industrial Code 23-1.21 (e) (2) & (3) are not applicable to the underlying action.

As none of the remaining alleged industrial code violations are applicable to the underlying case, plaintiff's Labor Law § 241 (6) are dismissed in their entirety.

### Plaintiff's Labor Law § 200 and common law negligence claims against Diagrama (motion sequence 007)

Diagrama moves to dismiss plaintiff's Labor Law § 200 and common law negligence claims as against it. Diagrama argues that it did not control the means and methods of plaintiff's work, nor did Diagrama have actual or constructive notice of any unsafe condition as to the Subject Ladder.

Plaintiff does not specifically address Diagrama's arguments to dismiss plaintiff's Labor Law § 200 and common law negligence claims. Plaintiff argues in opposition that Diagrama is subject to Labor Law § 200 and common law negligence as the general contractor and/or the Owners' agent on the Project. Plaintiff specifically argues that Diagrama "was vested with and did, in fact, exercise supervisory control and direction over the work performed and safety on site" (Plaintiff's affirmation in opposition at para. 10, NYSCEF Doc. No. 235).

The Owners do not specifically address plaintiff's Labor Law § 200 and common law negligence claim, but only argue that Diagrama was the general contractor on the Project.

Labor Law § 200 (1) states, in pertinent part, as follows:

"All places to which this chapter applies shall be so constructed, equipped, arranged, operated and conducted as to provide reasonable and adequate protection to the lives, health and safety of all persons employed therein or lawfully frequenting such places. All machinery, equipment, and devices in such

**450657/2018   VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No. 006 007**

**Page 25 of 30**

25 of 30

places shall be so placed, operated, guarded, and lighted as to provide reasonable and adequate protection to all such persons."

Labor Law § 200 "is a codification of the common-law duty imposed upon an owner or general contractor to provide construction site workers with a safe place to work" (*Singh v Black Diamonds LLC*, 24 AD3d 138, 139 [1st Dept 2005] citing *Comes v N.Y. State Elec. & Gas Corp.*, 82 NY2d 876, 877 [1993]). "[T]here are 'two broad categories' of personal injury claims: 'those arising from an alleged defect or dangerous condition existing on the premises and those arising from the manner in which the work was performed.'" (*Rosa v 47 E. 34th St. (NY), L.P.*, 208 AD3d 1075, 1081 [1st Dept 2022], quoting *Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d 139, 144 [1st Dept 2012]).

> "Where an existing defect or dangerous condition caused the injury, liability attaches if the owner or general contractor created the condition or had actual or constructive notice of it. Where the injury was caused by the manner and means [means and methods] of the work, including the equipment used, the owner or general contractor is liable if it actually exercised supervisory control over the injury-producing work."

(*Cappabianca v Skanska USA Bldg. Inc.*, 99 AD3d at 144 [internal citations omitted]; *see also Toussaint v Port Auth. of N.Y. & NY*, 38 NY3d at 94 [to recover under Labor Law § 200 "a plaintiff must show that an owner or general contractor exercised some supervisory control over the operation"]).

As previously stated, there are issues of fact as to whether Diagrama was the general contractor and/or the Owners' agent. However, "[a] claim for common-law negligence may lie even though there is no Labor Law § 200 liability" (*Mullins v Center Line Studios*, 194 AD3d 421, 422 [1st Dept 2021] [internal citations omitted]; *see also Pimentel v. DE Frgt. LLC*, 205 AD3d 591, 593 [1st Dept 2022]). As such, Diagrama may be negligent as to plaintiff's accident at common-law even if it is not a proper Labor Law defendant.

450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 26 of 30

26 of 30

Here, the accident occurred when the Subject Ladder "stumbled" causing plaintiff to fall (Plaintiff's October 5, 2017 tr. at 121-122). As such, Plaintiff's accident resulted from the means and methods of the work. Specifically, the accident resulted from plaintiff's use of the Subject Ladder on the worksite (*See Quiroz v New York Presbyt./Columbia Univ. Med. Ctr.*, 202 AD3d 555, 556 [1st Dept 2022] [means and methods analysis applied where plaintiff fell from an A-frame ladder that tilted after a leg of the ladder broke through a temporary masonite covering]; *Seferovic v Atlantic Real Estate Holdings*, LLC, 127 AD3d 1058, 1059 [2nd Dept 2015] [means and methods analysis applied where plaintiff was injured when the foot of an unsecured A-frame ladder twisted out from under him]; *see also Villanueva v 114 Fifth Ave. Assoc. LLC*, 162 AD3d 404, 406 [1st Dept 2018] ["Where a defect is not inherent but is created by the manner in which the work is performed, the claim under Labor Law § 200 is one for means and methods and not one for a dangerous condition existing on the premises"]).[3]

Assuming arguendo that Diagrama was the general contractor and/or the Owners' agent, Diagrama has established prima facie that it did not exercise actual supervisory control over plaintiff work. Plaintiff testified that on the date of the accident, his superior was 'Frank", a Vigilante employee who was "in charge of the job, the job site" (Plaintiff's October 5, 2017 tr. at 94-95). None of plaintiff's testimony suggests that Diagrama exercised actual supervisory control over the injury producing work. Moreover, it is uncontested that Diagrama did not possess or control any ladders on the worksite (Araujo tr. at 66).

Further, plaintiff has failed to create an issue of fact in opposition to the motion. Plaintiff refers to J. Schrijver's testimony as to Diagrama's role on the Project. Even assuming arguendo

---

[3] The Court notes that plaintiff has not moved for summary judgment against Diagrama on his Labor Law § 200 and common law negligence claims. Further, plaintiff has not presented any theory of liability under Labor Law § 200 nor common law negligence in opposition to Diagrama's motion apart from arguing that Diagrama was the general contractor and/or the Owners' agent.

**450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**                    **Page 27 of 30**
**Motion No. 006 007**

that Diagrama was the general contractor, said testimony is insufficient to create an issue of fact as to whether Diagrama exercised actual supervisory control over the injury producing work (*See Maddox v Tishman Constr. Corp.,* 138 AD3d 646, 646 [1st Dept 2016] [Regular general inspection of a site to ensure that work is progressing according to schedule and the authority to stop any work perceived to be unsafe are not enough to warrant imposing liability under Labor Law § 200 or common law negligence])

The accident arose from the means and methods of plaintiff's work and Diagrama has established that it did not exercise actual supervisory control over plaintiff's work. As such, there is no other basis to hold Diagram liable under common law negligence.

Accordingly, Diagrama is entitled to summary judgment in its favor dismissing plaintiff's Labor Law § 200 and common law negligence claims as against it.

***Owners' cross-claim for contractual indemnification against Diagrama (motion sequence 007)***

Diagrama moves to dismiss the Owners' cross-claim for contractual indemnification as against it. Diagrama argues that there was no written contract between Diagrama and the Owners.

The Owners do not address their contractual indemnification cross-claim in their opposition to Diagrama's motion.

"A party is entitled to full contractual indemnification provided that the intention to indemnify can be clearly implied from the language and purposes of the entire agreement and the surrounding facts and circumstances" (*Karwowski v 1407 Broadway Real Estate, LLC*, 160 AD3d 82, 87-88 [1st Dept 2018], quoting *Drzewinski v Atlantic Scaffold & Ladder Co.*, 70 NY2d 774, 777 [1987]). "A contractual provision imposing a duty to indemnify 'must be strictly construed to avoid reading into it a duty which the parties did not intend to be assumed'"

450657/2018 VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN
Motion No. 006 007

Page 28 of 30

28 of 30

(*Lombardo v Tag Ct. Sq., LLC*, 126 AD3d 949, 950 [2nd Dept 2015], quoting *Hooper Assoc. v AGS Computers, Inc.*, 74 NY2d 487, 491 [1989]).

Here, there is no dispute that the Owners and Diagrama did not have a written contract as to the Project. As such, there is no basis for the Owners' contractual indemnification claim against Diagrama.

Accordingly, Diagrama is entitled to summary judgment in its favor dismissing the Owners cross-claim for contractual indemnification.

### *Owners cross-claim for common law indemnification and contribution against Diagrama (motion sequence 007)*

Diagrama moves to dismiss the Owners' cross-claims for common law indemnification and contribution. Diagrama argues that it did not violate the Labor Law nor was it in anyway negligent as to plaintiff's accident.

The Owners do not address their common law indemnification and contribution cross-claims in their opposition to Diagrama's motion.

"To be entitled to common-law indemnification, a party must show (1) that it has been held vicariously liable without proof of any negligence or actual supervision on its part; and (2) that the proposed indemnitor was either negligent or exercised actual supervision or control over the injury-producing work" (*Naughton v City of New York*, 94 AD3d 1, 10 [1st Dept 2012], citing *McCarthy v Turner Constr., Inc.*, 17 NY3d 369, 377-378 [2011]; *Reilly v DiGiacomo & Son*, 261 AD2d 318 [1st Dept 1999]). "Thus, a party moving for summary judgment dismissing a common-law indemnification claim can meet its prima facie burden by establishing that the plaintiff's accident was not due to its own negligence" (*Cando v Ajay Gen. Contr. Co. Inc.*, 200 AD3d 750, 752 [2nd Dept 2021] [citations omitted])

**450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No.  006 007**

**Page 29 of 30**

[* 29]

29 of 30

As previously stated, Diagrama was not negligent as to the plaintiff's accident. As such, Diagrama is entitled to summary judgment in its favor dismissing the Owners' cross-claims for common law indemnification and contribution (*See Cando,* 200 AD3d at 753; *see also Padron v Granite Broadway Dev. LLC*, 209 AD3d 536, 537 [1st Dept 2022] [Court correctly granted summary judgment dismissing contribution claims, as the record demonstrated that movant was free from negligence]).

The parties' remaining arguments have been considered and are deemed unavailing.

## CONCLUSION AND ORDER

For the foregoing reasons, it is hereby

**ORDERED** that plaintiff, Steven Valdez's, motion for summary judgment pursuant to CPLR 3212 as to liability in his favor on his Labor Law §240 claims (motion sequence 006) as against Jeroen De Schrijver, Saskia De Schrijver, and Ellen Lutgarde Depoorter (collectively the "Owners") is granted, and the motion is otherwise denied; and it is further

**ORDERED** that Diagrama's motion for summary judgment pursuant to CPLR 3212 in its favor dismissing the complaint and all cross-claims (motion sequence 007) as against it is granted to the extent of dismissing plaintiff's Labor Law §§ 241 (6) and 200 claims and common law negligence claims, as well as Owner's cross-claims for contractual and common law indemnification against it.

_____
**4/2/2024**
**DATE**

_____
**SHLOMO S. HAGLER, J.S.C.**

| CHECK ONE: | | CASE DISPOSED | | | X | NON-FINAL DISPOSITION | | |
|---|---|---|---|---|---|---|---|---|
| | | GRANTED | | DENIED | X | GRANTED IN PART | | OTHER |
| APPLICATION: | | SETTLE ORDER | | | | SUBMIT ORDER | | |
| CHECK IF APPROPRIATE: | | INCLUDES TRANSFER/REASSIGN | | | | FIDUCIARY APPOINTMENT | | REFERENCE |

**450657/2018  VALDEZ, STEVEN vs. DE SCHRIJVER, JEROEN**
**Motion No. 006 007**

**Page 30 of 30**

30 of 30

[* 30]